762 P.2d 596

**Carl D. MACPHERSON, Plaintiff/Appellant,**

v.

**Paul TAGLIONE, Defendant/Appellee.**

No. 2 CA–CV 88–0046.

Court of Appeals of Arizona, Division 2, Department A.

May 31, 1988.

Review Denied Oct. 25, 1988.

Carl D. MacPherson, P.C. by Carl D. MacPherson, Tucson, pro se.

Molloy, Jones & Donahue, P.C. by D. Michael Mandig and George O. Krauja, Tucson, for defendant/appellee.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from the granting of a motion to dismiss for lack of personal jurisdiction. Appellant sued New England Rare Coin Galleries (New England Coin), a Massachusetts corporation, and Paul Taglione and Jane Doe Taglione, husband and wife, in the Pima County Superior Court for fraud and breach of contract in the sale to him of certain silver and gold coins. Appellant alleged that the "Certificates of Guarantee Grading and Authenticity" signed by Paul F. Taglione, as the chairman of the Numismatic Committee of New England Coin were false and misrepresented the true grade of the coins, which were in fact inferior to the grade stated in the certificates, and that New England Coin and the appellees refused to honor the guarantee contained in the certificate.

The Tagliones were served with process in Massachusetts and filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Rules of Civil Procedure, 16 A.R.S. The affidavit and deposition of the appellant reveal the following. Appellant was a resident of Arizona. He first became acquainted with the name of New England Coin when in April or early May of 1984 he received a telephone call at his residence in Tucson from Ed Finacarrio, who described himself as an account executive for the company. At that time Finacarrio informed him that New England Coin was in the business of selling and purchasing rare coins and described Paul Taglione as president of the company and their top coin grader. Appellant informed Finacarrio that he had called at a bad time because he was just about to leave for a summer vacation in Michigan, but if Finacarrio wanted to contact him and talk to him to a greater extent he could call him at his son's summer cottage in Michigan.

Appellant was subsequently contacted by Finacarrio in Michigan in June 1984. Finacarrio told him that a Certificate of Guaranteed Grading and Authenticity was provided for all coins, and that this guarantee was signed by the chairman of the Numismatic Committee, Paul Taglione. While he was in Michigan, appellant agreed to purchase the coins, all of which were subsequently delivered to his residence in Tucson. However, two of the Certificates of Guaranteed Grading and Authenticity were sent to his son's address in Michigan. The third was sent with the coins to Tucson. In purchasing the coins, the appellant relied upon the Certificates of Guaranteed Grading and Authenticity, which were signed by Paul Taglione in his capacity as president and chairman of the Numismatic Committee of New England Coin Galleries.

The affidavit of Paul Taglione which was filed in this case is as follows:

"PAUL F. TAGLIONE, being first duly sworn upon his oath, deposes and says as follows:

1. I am a resident of the State of Massachusetts.
2. While it is true that, at the time of the coin sales which form the basis of Mr. MacPherson's (sic) suit I was an employee of National Rare Coin Galleries, I was not involved in any way in the sale of coins to Mr. MacPherson (sic), other than to sign, for the company, the Certificate of Guaranteed Grading and Authenticity used in connection with the sale of coins sold by National Rare Coin Galleries.[1]
3. I own no property located in the State of Arizona.
4. I am not a resident of the State of Arizona.
5. I do not conduct, nor have I ever conducted, business in the State of Arizona, whether in connection with the performance of my duties at National Rare Coin Galleries or otherwise.
6. I was married to Mary Kate Taglione after the date on which Carl D. MacPherson (sic) claims to have made the purchase of the coins which are the basis of his allegations in Pima County Superior Court Case No. 231290."

The trial court granted the motion to dismiss finding, inter alia, that Paul Taglione did not reside in Arizona and did not conduct any business in Arizona. It further concluded that his wife was not in any way liable for any obligations allegedly incurred by her husband.

Appellant contends that the trial court erred in granting the motion to dismiss as to Paul Taglione and we agree.

Since the Arizona Rules of Civil Procedure were adopted from the Federal Rules of Civil Procedure, Arizona courts should give great weight to the interpretation given to similar federal rules. *Jenney v. Arizona Express, Inc.*, 89 Ariz. 343, 362 P.2d 664 (1961). Under the federal rules, the plaintiff has the burden of establishing the existence of personal jurisdiction and cannot "simply rest on the bare allegations

---

**1.** Although Taglione says he was merely an employee of National Rare Coin Galleries, the certificates signed by him show him to be the chairman of the Numismatic Committee of New England Coin Galleries.

**312**

of the complaint, but rather [is obliged] to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Marketing Systems, Inc. v. Jobar International Inc.,* 551 F.2d 784, 787 (9th Cir.1977). The plaintiff may meet his burden of proof on a Rule 12(b)(2) motion by a prima facie showing that jurisdiction was conferred by service under a long arm statute. *O'Hare International Bank v. Hampton,* 437 F.2d 1173 (7th Cir.1971). Once the plaintiff makes a prima facie showing of jurisdiction, "the burden is on the defendant to rebut that argument." *Fisher v. First National Bank of Omaha,* 338 F.Supp. 525, 527 (D.C.Iowa 1972), appeal dismissed, 466 F.2d 511 (8th Cir.1972). "[Those] conflicts that exist in the affidavits and pleadings must be resolved in [the] plaintiff's favor for purposes of determining whether a *prima facie* case for *in personam* jurisdiction has been established." *Wessel Company, Inc. v. Yoffee and Beitman Management Corp.,* 457 F.Supp. 939, 940 (D.C.Ill.1978).

■ The record in this case shows that New England Coin conducted business nationwide. There is no doubt that New England Coin was soliciting business in Arizona. The mere fact that in this case the coins were purchased by appellant while he was on vacation in Michigan does not detract from the fact that New England Coin initially contacted the appellant in Arizona and the coins would have been purchased by appellant while he was still physically in Arizona had he not been on vacation. Indeed, the coins were sent to appellant in Arizona. The question is whether the court's exercise of long arm jurisdiction offends "traditional notions of fair play and substantial justice" embodied in the due process clause of the Fourteenth Amendment. *International Shoe Company v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945); see also, *Aries v. Palmer Johnson, Inc.,* 153 Ariz. 250, 735 P.2d 1373 (App.1987). Individuals must have fair warning that a particular activity may subject them to the jurisdiction of a foreign court. This fair warning requirement is satisfied if the defendant has purposely directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. *Aries v. Palmer Johnson, Inc.* supra. When the defendant has purposely directed his activities at the residents of the forum state, he cannot avoid jurisdiction merely because he did not physically enter the state, and must present a compelling case that the presence of other considerations would render jurisdiction unreasonable. *Id.*

There seems no doubt that New England Coin is subject to personal jurisdiction. In essence, Paul Taglione argues that jurisdiction should not be exercised over him because he is only an employee of the corporation and did not participate in the sale. We do not agree. The affidavit of Taglione is more important for what it does not say than for what it does say. It does not deny that he was president of the corporation and it does not deny that he did not know that the certificates he signed were being sent along with the coins and that those coins were being sold in other states. The inferences are all to the contrary and lead to the conclusion that Taglione purposely directed his activities at residents of the forum in which the purchaser of the coins resided. Appellant has established a prima facie case which Taglione has not rebutted.

Appellant is entitled to his attorney's fees pursuant to A.R.S. § 12–341.01 which will be awarded upon compliance with Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S.

Reversed and remanded for further proceedings.

LACAGNINA, C.J., and HATHAWAY, J., concur.